Good morning, Your Honors. My name is Robert Powell, and I'm here on behalf of Mr. Fofana. I would like to reserve three minutes by way of rebuttal. Mr. Fofana is a refugee from Sierra Leone who lived in a small village called Cefadu in the diamond mining district in Sierra Leone. His family was killed by RUF rebels in the course of the Civil War. We submit that there are, at least I would like to discuss three different manners in which the decision by the Board was defective and improper and should be reversed. Well, let me ask you this, just sort of focusing on that the rebels seem to be generally attacking the town. Is there any evidence that the rebels intended to shoot Fofana's father as opposed to random bullets striking him? And assuming that Mr. Fofana's father was hit by a random bullet, what evidence is there that Fofana's family was targeted by the rebels? There is no evidence that a soldier saw Mr. Fofana's father and directed the gun at him and shot him in particular. That isn't in the record. But there is plenty of evidence about the motivation of the RUF rebels. And in particular Motivation in doing what? Attacking the village generally? To attack the village and the family in particular as well, as members of that village. The Board focuses solely on the testimony of Mr. Fofana, who's uneducated, who, you know, who really doesn't know much about the overall political situation, which is why he had an opportunity to testify, and explained the context in which this is happening. Well, and she does generally talk, but how do we connect the dots to Mr. Fofana? Because obviously that attack, the attacks that she talks about with the maiming and all of those, you know, those type of injuries aren't present in this situation. But it's very clear that what the RUF rebels are doing with respect to this particular village, Ms. Coten-Haven, Ms. Coten-Haven testifies, is attacking the village and because they, well, for, there's mixed motivation here, which is acceptable under Ninth Circuit case law. But at least part of the motivation is killing those villagers, slaughtering those villagers, because they're perceived as enemies. These are the groups that are attacking the village. Well, will we have to find the village as a social group, or will we have to find the diamond merchants as a social group in order to rule the way that you're asking the court to do in this case? So our argument does not rely solely on the social group argument. There's also a very clearly imputed and actual political opinion at stake here. With respect to the social group, what we propose as a social group is the diamond merchants living in that town. Those are the ones that the RUF rebels, according to Ms. Coten-Haven, was targeting, the people who had the money, who had the access to the diamonds, who are known to be, known to be supporters of the government. Did the I.J. or the Board rule on the social group issue? In other words, whether this is a proper social group and so forth, whether it's raised before the I.J. social group? Yes. Yes. It was raised before the, before, in the appeal to, in the appeal brief to the Board of Immigration Appeals. That argument was made to the Board. There's nothing in the opinion that refers to social group business. There's absolutely nothing in the opinion that refers to social group. There's also absolutely nothing that refers to imputed political opinion. That's correct. That's correct. Was that contention also raised? Yes. That was raised to the Board in the appeal brief that was filed to the Board of Immigration Appeals. Yes. Yes. There's also nothing. I mean, the Board's decision is defective because there's also nothing in there about the expert testimony, which is really crucial in this case. All the Board does is look at Mr. Fofana's testimony. And in effect, they're saying the applicant himself has to be able to articulate the reason and explain the context and explain the political persecution that's occurring there. That's really incorrect. I mean, after all, the Supreme Court says all the applicant has to do is present some evidence. Well, but for us, we have to be compelled to do otherwise, correct? And Mr. Fofana testified, I think, at AR-94 that the rebels were targeting a diamond merchant because they know diamond merchants, they have money, they always target rich people. That's correct. So, again, this is — it's a mixed motive case, which is perfectly appropriate under Ninth Circuit case law. Mr. Fofana also says at AR-145 that my family supported President Cabe's government. And we were involved in the diamond industry. And so that's why the RUF soldiers had reason to attack us. There's — you know, because the soldiers recognized this family, this village is a supporter of the government of Sierra Leone. I didn't — excuse me. This is Judge Hall. I got the impression that soldiers attacked the whole village and not individual diamond merchants. That's correct. I mean, the primary economic work there, I mean, is the diamond industry. I mean, that's an important — a very important part of what goes on in the village. So the fact that the RUF rebels are attacking the village on a wholesale basis I don't think undermines Mr. Fofana's claim that he's being persecuted. His family is being targeted as one of the villagers for those political reasons. But even assuming, you know, there's a lot of evidence, I think that there is of a — I'll call it general lawlessness, as the Board refers to it. That doesn't undercut the fact, if it is true, that there was also maybe another motive, namely the imputed political opinion. That's correct. It doesn't overwrite it. That's — I mean, there can be mixed motives in — and if there's at least part of the reason for the attack on the villagers — on the villagers is a political motivation, then that's adequate for political asylum. I would point to — there are two important cases, I think. One is the Knezevic case, which deals with an attack on a village in Bosnia-Herzegovina. And the second is Garcia Martinez, which involves an attack by government forces on a village in Guatemala. What was the second case? Garcia Martinez. Okay. Thank you. Well, there — there were some — I think the brother of the family had contacts, and then the women were raped, right? Yes. Yes, there is. But in that case, the Court very clearly recognizes mixed motives. And second, very important, which did not happen in this — in Mr. Fofana's case, the Court holds that you have to look at the — you can't look at the attack in isolation, but you have to look at the attack on the village in the context in which it occurs. And where there's systematic targeting of — of the villagers as a whole, and — and where the context shows that the soldiers are retaliating because they're imputing a political opinion to those villagers, then the record compels the — the on-account-of element compels it. Can I save the balance of your time for rebuttal? I would like to do that. Thank you. Okay. Thank you. I think we've focused the issue, so that will work. Good morning. Good morning, Your Honors. My name is Helen Bruner. I'm an assistant United States attorney here in the Western District of Washington here to represent the Respondent. Let me turn immediately to the question of whether or not there's a nexus here. Between the persecution that Mr. Fofana claims he has suffered in Sierra Leone as a young teenager and a particular social group or political opinion, because those are the two arguments that he claims, the nexuses that he claims. With respect to a social group, I think the problem here is that he is trying to create a social group out of either Diamond Merchants, when there's no evidence in the record that it was specifically aimed at Diamond Merchants, or — Well, there's a testimony of that missionary. The missionary's declaration, if I might, actually doesn't support that. If you look at — well, the one that I have in front of me right now is ER-149. That's the unsigned one. But at paragraph 5, where she talks about what happened, she says basically that the RUF rebels attacked villagers in this way as a part of their program to take control of the diamond-producing areas. And she talks about perhaps the political motivation generally, because they're perceived as being enemies. Well, doesn't that mean something, that they attacked it to take control? Why would you want to take control of a diamond-producing area, except to get diamonds? Oh, Your Honor, I don't disagree. But that does not mean that they were targeting particular merchants. They were targeting the villagers as a whole. No, not a particular merchant, but the merchant social group at the time. Well, then, Your Honor, I think the problem is you and I are arguing about it, but the board didn't address it. They ignored it. What are we supposed to do with that? Are we supposed to decide the question for the board? Your Honor, I think what the board decided here is that he did not establish a nexus. It doesn't say that in the opinion, does it? It completely ignores the, in fact, both bases, the social group and the imputed political opinion. Where does it, you know, make findings on those and reach a reasoned conclusion? Well, Your Honor, I think what we have here is an IJ's decision that does say that he did not establish a nexus, and we have the BIA's opinion affirming that IJ's decision and saying that he failed to prove past persecution on ground – based on a protected ground. That's how I read it, Your Honor, and that's how – I apologize if I'm wrong. But he doesn't discuss imputed political opinion, does he, the IJ? What does he mention there? What does he discuss there? What does he discuss, you know, social group and whether, you know, a diamond merchant is a proper social group under the statute? What he says here is that what the – focusing on the IJ's opinion – The answer is he doesn't reach a conclusion on that, does he, the IJ? What he basically – Tell me what he does. Your Honor, as I read it on – Show me – point to language to me where he makes that – makes that finding or reaches that conclusion on either of the grounds. Certainly, Your Honor. What he says here in the – and I'm looking at AR 56 and 57 where he talks about the Konecevich opinion and distinguishes that opinion, which the Konecevich opinion, if the Court may recall, is the case involving the Serbians and ethnic cleansing. And he goes on to distinguish this. He does not – and the Court goes on to – the IJ goes on to say that Mr. Favana does not make any claim that anyone outside his immediate family was aware of what he asserted his family to be in general support of the government of Sierra Leone. So he's dealing there with the political opinion, and he goes – specifically discusses below there that the testimony about the fact that Mr. Favana stated that the rebels attacked because they wanted to get rich. And all of that is directed, I believe, Your Honor, at a finding that there was not a particular nexus. Let me repeat my question. There isn't a word in here, is there, about imputed political opinion? No, Your Honor. He does not say imputed political opinion. There's no finding here on whether or not Diamond Merchants is a proper social group under the statute, is there? No, Your Honor. So should we make that decision for the Board? Your Honor – Raised by the – by the Petitioner? I didn't hear the last part of your question, Your Honor. I apologize. The Petitioner raises these claims. One, that he contends he belongs to the social group that was persecuted. Two, he claims that he was persecuted on account of imputed political opinion. The Board makes no – or the I.J. makes no finding on either of those contentions. So should we make those findings for the Board? To the – let me see if I can answer your question directly. I think the answer here is that this – the opinion of the BIA and the I.J. can be and found that there was no nexus. Well, where's the finding? You didn't – I asked you that several times, and you haven't pointed out – pointed the finding to me. To the – to the extent that the Court, in answer to your question, Your Honor, to the extent that the Court concludes that that is not sufficient and it does not show a discussion of merchants as a social group, then I suppose this Court should remand to the BIA. I guess my argument simply is, Your Honor, I don't believe that there is evidence in the record. I believe that the findings of the I.J. are, in fact, supported by substantial evidence that there is not a social group. That's what I was attempting to articulate in response to the Court's question. I would also point out that the – Well, what should we make of the fact that the I.J., although he does mention in passing, he says he takes note of the expert declaration, but he doesn't discuss that testimony at all. He just sort of ignores it. Do we assume from that that he finds it not credible? No, Your Honor, I don't believe so. I believe that the Court – you can make from that exactly what he said, and that is that he considered it. And perhaps I could point to one other thing in that affidavit that the Court will permit me. For example, it's been argued that the affidavit supports a finding that people who return to Sierra Leone would now, today, would be tortured, face torture and persecution. And that's – it surely says that in paragraph 6, but if you further read that paragraph, there's no discussion about persecution or torture. What – what she's talking about here in paragraph 6 and paragraph 7 of her declaration is really the conditions faced by young minors in Sierra Leone. And while that may be appalling, you know, lack of medical care, which is what she's discussing here as the basis for why these young men died, is an appalling situation. We would all agree with that. Nonetheless, that doesn't equate to persecution on a ground – based on a protected ground. No, except – except her statement in paragraph 5 does, that the rebels attacked the villagers also because they regarded the villagers as enemies who supported the government of President Cava. That's clearly an imputation of political will. And that – and that statement is completely ignored by the I.J., right? I believe the – the I.J. basically looked at that and then looked at some of the other things in the record. And if I might refer the board here. Do we have to – to come to your conclusion, do we have to, I guess, imply that, okay, it was considered, but by virtue of the fact that finding no nexus, that they were considered to be general statements and not specific as to Mr. Fufani – Fufano? That's precisely my argument, Your Honor. And I think to the extent that you do find that he did show past persecution, I think that it's also been rebutted in the record. But I did want to point out one thing in that regard. If you look even at the materials that Mr. Fufani himself submitted to include the 1998 State Department report, and I would refer you specifically to AR-260, it states the following, and that's the difficulty that I think we're having here. It states, The conflict in Sierra Leone, which may be nearing an end, does not appear to be based on ethnic, territorial, or political factors. Attacks against small villages seem to be for the main purpose of looting. Thus, no particular group seems to be singled out. And that's really at the heart of what all his testimony is about and what everyone is saying. They want to control the diamond area because why? They want the money from the diamond production area in order to fund their rebellion. And at the end of the day now, we have the State Department report which establishes that the RUF rebels have been demobilized and no longer are armed and are being prosecuted by the government. What more? Okay. There is a State Department report for the changed country conditions. Yes. What more is there in the record besides that? Don't you need to have more than just the State report? Well, Your Honor, I think on the Ninth Circuit, I think what the issue there is not whether or not the country report itself can be used, but rather whether or not the country report addresses the exact issues that Mr. Fofana faced. I think this is one of those cases where his generalized assertion that he faced persecution because he lived in a diamond mining area and his father was a diamond merchant and everyone in that area, it would appear by his own testimony, suffered that persecution. When you then say that the persecutors, the rebels, are no longer in control, they're no longer acting in this fashion, and they are now being prosecuted for their actions, it seems to me we have addressed the problem. But the I.J. didn't go off on a changed country condition, did he? The I.J., I believe, also mentions that in his opinion, Your Honor. Well, I don't want to take up your time. If you say it's there, I'll find it. It's AR-58, Your Honor, to be specific. And I see my time is up. And if the Court has no further questions. I guess if I may just make briefly a couple of points. First of all, regarding the changed conditions and the situation that Mr. Fofana is facing if he returns to Sierra Leone, first, I would point out that he does not have to show that he would actually suffer persecution. Under the regulations, 8 CFR Section 208.13b3, if past persecution is shown, even if there are changed circumstances, the person can be granted asylum if he or she may suffer other serious harm upon removal to that country, which is exactly the situation he's facing, even if we assume, and we don't concede this, but even if we assume that because of changed circumstances, he does not fear persecution anymore, he should be granted asylum because he suffered in the past and because he faces other serious harm if he is forced to return to Sierra Leone. That's clearly permitted, an argument that we made to the Board, and the Board completely ignored. Can you tell me, Mr. Judge Hall, will you define what that serious harm he faces on his return? I'm sorry? Tell me what the serious harm is he faces on his return. Yeah. The fact, as Ms. Kortenhoven explained, the only place he can go back is to his hometown, to his home village of Sefidu. The only economic support he has there is working in the diamond mines, and so he faces the, what she called the torture, living under that system of slavery if he returns to Sierra Leone. In other words, you'd be a diamond miner, and that's pretty awful. Yes. That's the other serious harm that he would be facing. With respect to changed country conditions... All right. You have about three seconds, so wrap it up. I would point out, first of all, that the Department of State report relied on by the Board is ambiguous. It clearly, it states that there are continuing reports of abuses by RUF rebels, first of all. Second, it's not specific to Sefidu. There is evidence that we submitted with respect to the diamond mining areas specifically that was ignored by the Board of Immigration Appeals at AR-177 to 178 and AR-204, refugees from that area talking about the continuing abuses by RUF soldiers, RUF rebels. I think my time is up. All right. Thank you for your argument. This matter will now stand submitted. Thank you, Your Honor. The last matter on calendar is Ali Sukunu v. Alberto Gonzalez, 06-71824. Thank you, Your Honor.
judges: Hall, Tashima, Callahan